```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/30/20
```

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

   ERIC ALI,

                                  Plaintiff,

        -against-                        1:16-cv-01994 (ALC)

   COURT OFFICER T. ELEAZAR RAMOS,      **OPINION AND ORDER**
   COURT OFFICERE BRUCE KNOWLES, AND
   LIEUTENANT SERGEANT STEWART STILL

                               Defendants.

-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

      Eric Ali suffered permanent nerve damage to his left hand from handcuffs applied by two New York State court officers in 2015. Ali brought suit alleging constitutional violations pursuant to 42 U.S.C. § 1983. After several amendments, Ali's third amended, operative complaint names as Defendants, Court Officers T. Eleazar Ramos and Bruce Knowles, and Lieutenant Sergeant Stewart Still. The complaint asserts claims for deliberate indifference to serious medical needs, excessive force, and failure to intervene. Defendants now move for summary judgment. In his opposition briefing, Ali conceded his claims against Sergeant Still and his claim for deliberate indifference. Defendants' motion for summary judgment as to Ali's remaining claims against the court officers for excessive force and failure to intervene are DENIED.

### PLAINTIFF'S LOCAL RULE 56.1 DEFICIENCIES

      As a preliminary matter, Defendants argue that I should treat the facts in their Rule 56.1 statement as uncontroverted because Ali failed to comply with my Individual Rules, and Local

Rule 56.1 in submitting his statement of facts. (Defs. Reply or ECF No. 122 at 6–7). Along with their motion for summary judgment, Defendants submitted their statement of undisputed material facts in compliance with Local Rule 56.1. (ECF No. 114). Ali, however, did not respond to this submitted statement. Instead, in the body of his summary judgment opposition briefing, Ali responded to the facts set forth in Defendants' memorandum of law in support of their motion for summary judgment. Ali did raise disputes as to facts that appeared in this section of Defendants' briefing. (Pl. Opp. Or ECF No. 121 at 8–18).

For the reasons provided below, I consider what Plaintiff submitted as a Rule 56.1 statement, as well as the record as a whole.

Local Rule 56.1 requires the party moving for summary judgment to file a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. Rule 56.1(a). The nonmoving party is required to respond with "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party[.] Local Civ. Rule 56.1(b). Additionally, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. 56(c)." Local Civ. Rule 56.1(d). "The facts set forth in a moving party's statement 'will be deemed to be admitted unless controverted' by the opposing party's statement.'" *Holz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001) (quoting Local Rule 56.1(c)).

Ali failed to comply with Local Civil Rule 561.1, which gives the court discretion to deem all material facts set forth in Defendants' 56.1 statement as admitted. *See Jimenez ex rel. Jimenez v. KFRC of California*, No. 02 Civ. 2826, 2003 WL 22244673, at *3 (S.D.N.Y. Sept. 30,

2003). However, "[a] district court [also] has broad discretion to determine whether to overlook a party's failure to comply with local rules…[and] may in its discretion opt to conduct an assiduous review of the record.'" *Headley v. Fisher*, No. 06 Civ. 6331, 2010 WL 1427585, at *4 (S.D.N.Y. Apr. 7, 2010) (quoting *Holz*, 258 F.3d at 73) (internal citations and quotation mark omitted). Given Ali's submission of some statement, I think it appropriate here to consider Ali's submitted statement and conduct an assiduous review of the record.

## BACKGROUND

### I. Factual Background

In early 2015, Ali was indicted for second-degree burglary and other related charges. (Pl.'s 56.1 at § A). Ali pleaded not guilty to the charges and was incarcerated pending trial. *Id.* On July 21, 2015, the date of the incident, Ali appeared before Judge Solomon in New York County Supreme Court Criminal Term. Defendants Still, Knowles, and Ramos were all assigned to Judge Solomon's courtroom on that day. (Defs. 56.1 at ¶ 7).

Ali was transported to the courthouse by the Department of Corrections ("DOC") and held in the DOC holding area on the 12th floor until his appearance. (*Id.* at ¶¶ 8–12; Pl.'s 56.1 at § A). Either Ramos or Knowles signed Ali into UCS custody and escorted him in handcuffs to the holding area connected to Justice Solomon's courtroom. (Defs. 56.1 at ¶¶ 8–10). Ali does not recall which officer handcuffed him. Ali testified that he had informed the officers that normal sized handcuffs did not fit his large wrists, (*Id.*; Pl. Tr. or ECF No. 118-1 at 28:7–30:13), but the officers told Ali that because of his "big mouth" they were not going to retrieve larger cuffs. (Pl.'s 56.1 at § A; Pl. Tr. at 39:9–23). Ali testified that the officers told him that they knew he was planning "to apologize to Judge Solomon" for an outburst he had at a prior court appearance." (*Id.* at 59:24–60:4). In his testimony, Officer Knowles confirmed that at his last

3

court appearance Ali "was loud, Judge kept telling him to be quiet, let me talk, and he kept going on and on, and the Judge had him removed from the courtroom." (ECF No. 118-2 at 27:17–22).

According to Ali, the officers applied the regular-sized handcuffs at about 10:00 a.m. in the morning, and they indeed did not fit. Ali testified that the officers "made them fit on one click" which caused Ali pain. (*Id.* at 44:6–12; 37:7–14). Ali testified it took the officer five or six minutes to get just the one click. (*Id.* at 72:17–18). Again, it is disputed which officer applied the handcuffs. Ali testified that he thought Ramos handcuffed him. (Pl. 56.1 at § A; Pl. Tr. at 40:18–25; ECF 118-2 at 26:8–20). According to Ramos's and Knowles's sworn affidavits, Knowles initially handcuffed Ali to bring him to the holding pens behind Judge Solomon's courtroom. (Knowles Decl. at ¶ 9). Knowles states that Ali never said "anything to [him] about his handcuffs being too tight or uncomfortable." (*Id.*) Ramos provided that he then handcuffed Ali, presumably because Knowles had removed the cuffs, and escorted Ali from the holding pens to the courtroom. (Ramos Decl. at ¶ 11). Ramos states that Ali asked him to "double-lock the handcuffs because his wrists were large," and Ramos did so. (*Id.* at ¶¶ 11–12). Ramos provides he "had no difficulty applying the handcuffs on Ali's wrists, and he did not state or otherwise indicate that they were too tight or uncomfortable." (*Id.* at ¶ 12). Both officers stated they used "standard-issue M100 handcuffs." (*Id.* at ¶ 11; Knowles Decl. at ¶ 9). Ali testified that both officers were present when he was cuffed. (Pl. Tr. at 40:18–25).

Ali testified that then, "his hands got swollen," (*Id.* at 44:19) as the cuffs were on his bone and "tight as hell." (*Id.* at 72:2–12). He testified he immediately informed Ramos and Knowles of his discomfort, but they responded that he had to wear the cuffs regardless because they were all that was available. (*Id.* at 40:19–41:19; 72:15–16).

4

Ali testified that while he was still in the holding pen area, one officer inserted the key into the cuffs and moved it and bent it, placing extreme pressure on Ali's wrists. Ali stated that it felt like the officer "was roughing him up." (*Id.* at 82:5–15). Ali testified that during this assault, the steel key broke off in the lock. (*Id.* at 82:16). He testified that he asked the officer if he was doing this to him because Ali had previously had a problem with Judge Solomon. (*Id.* at 87:19–24).

After the key broke, Ali testified that his case was called, and he was led into the courtroom with the broken key still in the cuffs. The officers did not inform the Judge or Ali's lawyer of the problem. (*Id.* at 88:2–8). Ali testified he felt light-headed throughout this first court proceeding. (*Id.* at 92:11–25).

The parties do not dispute that at some point during the first court proceeding, Judge Solomon determined there needed to be a "second call" on Ali's case to allow him time to track down several documents he needed. (Pl. 56.1 at § B). Judge Solomon directed his staff to hold Ali in the back of his courtroom and advised that the second call would be in about 10 minutes. *Id.*

According to Defendants, Officer Knowles had no trouble applying Ali's handcuffs and Ali did not complain about his handcuffs until the officers tried to remove the cuffs after his second case call. (Def. 56.1 at ¶¶ 17, 26). At the end of the second call, the officers stated that they escorted Ali back to the holding-pens area and attempted to remove his handcuffs. (*Id.* at ¶ 28). The officers stated that they "were unable to dislodge the key from the cuff stuck on Ali's left wrist" and the key broke in the lock while Ramos was trying to remove it. (*Id.* at ¶ 30). They were able to remove the cuff from his right wrist using a key.

Officer Ramos testified that as soon as the key broke, he immediately notified Sergeant Still. (*Id.* at ¶ 31). Sergeant Still then called 911 to request emergency assistance. According to Defendants, in between calling 911 and the arrival of emergency services, Sergeant Still attempted to remove the handcuff using bolt cutters. (*Id.* at ¶ 37). Ali does not dispute that after the second call, the officers attempted to remove his cuffs, however, he contends that Sergeant Still attempted to remove the handcuff with bolt cutters *prior* to calling 911, which delayed medical care. (Pl. 56.1 at § E). Additionally, Ali testified that that the wire clippers caused the cuffs to click tighter around his wrists, causing him to scream in pain. (*Id.* at 111:12–22).

Defendants contend that emergency services, the fire department, arrived at Judge Solomon's courtroom nine minutes after Sergeant Still called for help. (Defs. 56.1 at ¶¶ 38–39, 41). The ambulance and EMTs reached Ali two minutes later. (*Id.* at ¶¶ 20, 42). Ali testified that the fire department arrived approximately 15 to 20 minutes after the broken handcuff ratcheted tighter on his left wrist. (Pl. Tr. at 139:8–19). Defendants assert, and Ali does not dispute that it took the fire department fifteen minutes from the time of its arrival to remove the cuff. (Defs. 56.1 at ¶ 46). Thereafter, the EMTs began administering medical treatment and transported Ali to New York Presbyterian Hospital. (*Id.*).

Ali required no medical treatment for his right hand, but the swelling continued in his left hand and forearm. (Pl. Tr. at 202:11–204:4; Defs. 56.1 at ¶ 48). In July 2018, Ali had nerve-decompression surgery on his left wrist. He testified the surgery failed to alleviate his symptoms. (*Id.* at 201:4–204:4).

**II. Procedural Background**

Ali brought the instant action against Defendants on March 17, 2016. (ECF No. 1). Originally, Ali brought suit against Anthony Annucci, the Acting Commissioner of the New

6

York State Department of Corrections, and Court Officer Ramos. (*Id.*) He amended his complaint on March 28, 2017, eliminating Annucci as a defendant and adding Court Officer John Doe 1. (ECF No. 39). On April 24, 2017, Defendants filed a motion to dismiss. (ECF Nos. 45–47). The Court denied the motion on March 14, 2018. (ECF No. 54). Ali again amended his complaint on March 22, 2018, eliminating as a defendant Officer John Doe, and adding as defendants Court Officer Knowles and Lieutenant Stewart Still (ECF No. 60).

In his Third Amended Complaint, Ali alleges three claims pursuant to 42 U.S.C. § 1983. Ali alleges that Defendants exercised deliberate indifference to his safety and medical needs by handcuffing him "in a manner to ensure an affliction of severe pain and discomfort and subsequently delaying the handcuffs being removed." (ECF No. 60 or TAC at ¶¶ 13–16). Further, Ali alleged that Defendants used excessive force or failed to intervene to prevent the deliberate indifference and excessive force. (*Id.* at ¶¶ 17–24).

Defendants now move for summary judgement on all claims. (ECF Nos. 118–19). In the conclusion of his opposition to Defendants' motion, Ali conceded summary judgment as it relates to Defendant Still and on his Deliberate Indifference Claim. (ECF No. 121 at 28).

**LEGAL STANDARD**

"Summary judgment is appropriate only where all submissions, pleadings, affidavits, and discovery materials that are before the Court, taken together, 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Rolkiewicz v. City of New York*, 2020 WL 1033792, at *3 (S.D.N.Y. March 3, 2020) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The moving party bears the burden of demonstrating the absence of a material factual

question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party." *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 262 (S.D.N.Y. 2013). "A fact is 'material' only if it will affect the outcome of the suit under governing law. For there to be a 'genuine' issue about the fact, the evidence must be such that a reasonable jury could *return a verdict for the nonmoving party." Usavage v. Port Authority of New York and New Jersey*, 932 F. Supp. 2d 575, 589 (S.D.N.Y. 2013) (internal citations and quotation marks omitted).

In reviewing the evidence and inferences that may reasonably be drawn, the court "may not make credibility determinations or weigh the evidence ... 'Credibility determinations ... [is a] jury function[ ], not [that] of a judge.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d. Cir.2005) (quoting *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505).

## DISCUSSION

### II. Excessive Force

Ali alleges that Defendants exercised excessive force through handcuffing in two ways: First, they forced too-small handcuffs onto his wrists; and second, one officer intentionally "rough[ed] him up" by inserting the key into the cuff and bending it to apply "extreme" pressure on Ali's wrists intentionally. (Pl. Tr. at 82:5–15). Ali is uncertain which Officer applied the handcuffs, but he alleges that both Ramos and Knowles were present when he was cuffed.

8

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees like Ali from the use of excessive force by corrections officials like Defendants. "When force is 'purposefully or knowingly used against a pretrial detainee, the detainee must show only that the force was objectively unreasonable.'" *Campbell v. Hanson*, No. 17-cv-1024, 2019 WL 2717691, at *3 (S.D.N.Y. June 28, 2019) (quoting *Portillo v.* Webb, No. 16 Civ. 4731, 2017 WL 4570374, *4 (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)); *see also McGarrell v. Arias*, No. 18 Civ. 2273, 2019 WL 2528370, at *3 (S.D.N.Y. Mar. 1, 2019) (quoting *Kingsley*, 135 S. Ct. at 2473). Objective reasonableness hinges on the "facts and circumstances of each particular case." *Kingsley*, 135 S. Ct. at 2473. Courts may rely on "factors such as (1) the force used in relation to the need for force, (2) a plaintiff's resulting injuries, (3) efforts made by an officer to limit the amount of force applied, (4) the severity of the situation at hand, (5) the threat reasonably perceived by an officer or officers, (6) and the resistance level of a plaintiff." *Campbell*, 2019 WL 271717691, at *4.

Courts apply a modified version of this inquiry where an excessive force claim is based on handcuffing. "In evaluating the reasonableness of handcuffing, a [c]ourt is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *White v. City of New York*, No. 17-CV-2404, 2019 WL 1428438, *10 (S.D.N.Y. March 29, 2019) (quoting *Lynch*, 567 F.Supp.2d at 468). "The injury requirement is particularly important[.]" *Morocho v. New York City*, No. 13 Civ. 4585, 2015 WL 4619517, at *8 (S.D.N.Y. July 31, 2015).

Ali's claim that his handcuffs were unreasonably tight is the more traditional fact pattern of a handcuff-based excessive force claim. His allegation that one officer pushed the key into the handcuff lock, against Ali's skin, and bent the key until it broke is less traditional. However, in

9

circumstances like this, where "an officer used handcuffs as a weapon against the arrestee[,]" courts in this district apply the modified handcuffing analysis. *Usavage*, 932 F. Supp. 2d at 594 (applying modified rule where plaintiff alleged an officer "pushed down on the handcuffs over Plaintiff's protests and compressed them to an excessive degree, thereby causing physical injury."). Accordingly, both components of Ali's claim are analyzed together as handcuff-based and collectively.

The first inquiry in the modified handcuff-reasonableness inquiry is whether the handcuffs were unreasonably tight under the circumstances. *See Id.* at 595. Ali testified that one officer, unprompted, used the handcuff key as a weapon, causing it to break off in the cuff. If a jury credits this testimony, it could find reasonably that Ali was subject to excessive force. Ali's testimony is countered by the declarations of Officers Ramos and Knowles, who provided that they placed the handcuffs on Ali without difficulty. (Knowles Decl. at ¶8). However, "the shared and liability-thwarting recollections of multiple defendant police officers in an excessive force claim cannot overwhelm or discredit a plaintiff's account merely through sheer force of numbers." *Usavage*, 932 F. Supp. 2d at 595. I conclude that there are genuine disputes of material fact related to the inquiry of reasonable tightness.

Second, courts consider whether "defendants ignored the detainee's pleas that the handcuffs were too tight." *Id.* (quoting *Esmont*, 371 F. Supp. 2d at 115). Ali testified that he informed the officers that the handcuffs were too tight immediately and that he objected to the officer's use of the key to inflict pain. (Pl. Tr. at 85:13–86:8). Defendants argue that Ali's account again is undermined by the declarations of Officers Ramos and Knowles and the testimony of Adam Freedom, his attorney at the time of the incident, all of which stated that,

before the key broke, Ali never informed anyone that the handcuffs were too tight. *See* (Knowles Decl. at ¶ 9; Ramos Decl. at ¶ 12; Freedman Tr. at 46:8–13).

First, Ali's attorney's declaration does not contradict Ali's account of events. Ali does not allege that he told his attorney about the tight handcuffs and consequential pain. The officers' affidavits, however, do contradict Ali's testimony, but as discussed above, this type of evidence does not preclude finding a *genuine* factual dispute. It is not for me to weigh the credibility of Ali's testimony against the statements of the officers. That function belongs to the jury at trial. I find there exist genuine disputes of material fact concerning the second element of this inquiry.

"The third question turns on the 'degree of injury to [Plaintiff's] wrists." *Usavage*, 932 F. Supp. 2d at 596 (quoting *Esmont*, 371 F. Supp. 2d at 215). The parties do not dispute that Ali sustained a serious injury from this handcuffing incident. Ali submitted a report from his doctor confirming that Ali suffered persistent symptoms and dysfunction that required surgery in 2018. (ECF No. 121-6 at 1). The report further provides that Ali experienced minimal relief from the surgery. "He has been unable to use his hand normally, and there is constant swelling and decreased mobility.…Prior to the injury, he was able to perform work in construction, but is now unable to do that line of work" given that the "altered sensibility and weakness of his left hand" are "constant." (*Id.*) The report finds that Ali "presents with the diagnosis of left chronic peripheral neuropathy, hand contracture, and tendinitis within the spectrum of CPRS II…These perceived symptoms are permanent as would be expected with the nature of this injury, and the patient's residual subjective complaints are consistent with the…medical documents associated with the incident." (*Id.* at 2). The report concludes that "it is predictable that Ali's condition will at best only partially improve." (*Id.*)

11

Defendants discount these severe injuries, arguing that the only alleged injury suffered by Ali *as a result of Ramos's and Knowles's handcuffing*, was temporary discomfort. (ECF No. 119 at 24–25). Defendants are correct that Ali concedes that the pain he experienced before the key broke in the lock was minimal and that he experienced no lasting injury to his right wrist. (Pl. Tr. at 109:20–22; 225:21–226:5). It is also accurate that "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch*, 567 F.Supp.2d at 468. However, Defendants err in limiting the relevant scope of Ali's injuries to those that existed before the key broke.

Ali alleges that the key broke because one Defendant forcibly inserted it into the handcuff and bent it to cause Ali pain. If a jury credits this allegation, then it may reasonably conclude that the proceeding injuries resulting from the handcuff getting stuck on Ali's wrist can be attributed to Defendant's use of excessive force. Accordingly, it is appropriate to consider the full extent of Ali's injuries, which a reasonable jury could find were severe. "[L]ong-lasting nerve damage…plainly satisfies the 'particularly important' injury requirement" as "nerve damage is one of the principal forms of injury that can be deemed sufficient to prevent summary judgment in excessive force cases." *Usavage*, 932 F. Supp. 2d at 597. Ali provided corroborating evidence to support the scope of his nerve damage and Defendants concede that Ali required surgery to address his injuries. From this record, a reasonable jury could credit Ali's account of injuries.

I find there exist genuine disputes of facts material to the objective reasonableness of the officers' actions, barring summary judgment on Ali's excessive force claim.

**II. Failure to Intervene**

"An officer may be held liable for preventable harm caused by the actions of other officers, if '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a

reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" *Jackson v. City of New York*, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013) (quoting *Jean-Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008)). Whether "an officer ... was capable of preventing the harm being caused by another officer is an issue of fact for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Smith v. P.O. Canine Dog Chas*, No. 02–CV–6240, 2004 WL 2202564, at *9 (S.D.N.Y. Sept. 28, 2004).

As discussed above, Ali demonstrated there are genuine disputes of material fact for trial regarding whether Defendants' actions constituted excessive force. Where courts in this Circuit determine such disputes exist regarding a plaintiff's underlying excessive force claim, they generally are reluctant to grant summary judgment on a dependent failure to intervene claim unless the evidence is clear that the alleged excessive force was not of a sufficient duration to permit a bystander officer to intervene. *See, e.g., John v. City of New York*, 406 F. Supp. 3d 240, 246 (E.D.N.Y. 2017) ("The Court cannot determine whether excessive force was used and therefore cannot determine whether any of the Officer Defendants failed to intervene to prevent the deprivation of Plaintiff's constitutional rights."); *Jean-Laurent Wilkinson*, 540 F. Supp. 2d 501 (S.D.N.Y. 2008) (denying summary judgment on failure to intervene claim where the strip search constituting the alleged excessive force was of a sufficiently long duration and there remained issues of material fact as to whether Plaintiff's constitutional rights were violated by the strip search); *Cf. Lloyd v. City of New York*, 246 F. Supp. 3d 704, 724 (S.D.N.Y. 2017) (granting summary judgment on failure to intervene claim where the relevant alleged excessive force was a push that happened quickly).

Based on Plaintiff's testimony, a reasonable jury could find that the non-handcuffing officer had a reasonable opportunity to intervene, preventing his fellow officer from aggressively turning the key inside the handcuff lock to cause Ali pain. Ali testified that the application of the excessively tight handcuffs took five or six minutes, and that both officers were present during the key-twisting incident. (Pl. Tr. at 81:16–82:25). He also described how the officer twisted the key and put pressure on the cuff, ignoring his exclamations of pain. (*Id.*) Based on this description, this assault was not the type of quick use of force that denies potential interveners the chance to assist.

I find there are genuine issues of material fact that bar summary judgment on Ali's failure to intervene claim.

### A. Qualified Immunity

Defendants assert that they are entitled to qualified immunity on all Plaintiff's claims. (ECF No. 119 at 29–30).

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Rolkiewicz*, 2020 WL 1033792 at *9 (quoting *Bradway v. Gonzales,* 26 F.3d 313, 317–18 (2d Cir. 1994)) (internal citation omitted). Thus, "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Usavage*, 932 F. Supp. 2d at 593 (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)) (citations omitted).

14

Summary judgment on qualified immunity grounds is improper where there are genuine factual disputes material as to "whether defendant officers' actions violated clearly established law and as to whether 'officers of reasonable competence could disagree on the legality of the defendant[s'] actions.'" *Id.* (quoting *Toliver v. City of New York*, No. 10 Civ. 5803, 2012 WL 6013098, at *8 (S.D.N.Y. Dec. 3, 2012); *see also Lloyd*, 246 F. Supp. 3d at 723.

No officer of reasonable competence could dispute that twisting a handcuff key in the manner alleged by Ali is objectively unreasonable in these circumstances. As discussed above, the injury here caused extensive and permanent nerve damage to Ali's hand. Any reasonably competent police officer should know that this type of deliberate infliction of injury is excessive force prohibited by the Fourth Amendment. *See Usavage*, 932 F.Supp.2d at 598 (quoting *Golio v. City of White* Plains, 459 F.Supp.2d 259, 265 (S.D.N.Y. Nov. 2, 2006). Accordingly, Defendants' qualified immunity defense is DENIED at this time.

## CONCLUSION

As discussed above, Plaintiff conceded his claim for deliberate indifference and all claims against Sergeant Still. Accordingly, the Clerk of Court is respectfully asked to remove Sergeant Still as a Defendant in this matter. Plaintiff's deliberate indifference claim is DISMISSED.

Summary judgment is DENIED as to Plaintiff's excessive force and failure to intervene claims. The parties should submit a joint status report by October 9, 2020.

**SO ORDERED.**

Dated: September 30, 2020
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**

15